## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KEITH PATRICK HENRY,

      Petitioner,

v.                                                    Case No. 3:21-cv-891-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

## I.  **Status**

Petitioner Keith Patrick Henry, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. See Doc. 1. Petitioner challenges a state court (Duval County, Florida) judgment and conviction for attempt to possess cocaine, a lesser included offense (count one); and conspiracy to traffic in controlled substances (count two). Petitioner is serving a cumulative twenty-year term of incarceration. Respondents filed a Response. See Doc. 8 (Resp.).[1] Petitioner

_____

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

replied. See Doc. 13. This case is ripe for review.[2]

## II.    <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show: (1) counsel's performance was outside the wide range of reasonable,

4

professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)); see also Burger v. Kemp, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Id.; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the

deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.  **Factual History**

The state proceeded to a jury trial on three counts – attempted trafficking in cocaine (count one); conspiracy to traffic in cocaine with James Degelmann named as the coconspirator (count two); and conspiracy to traffic in cocaine with William Peterson named as the coconspirator (count four).

At trial, Drug Enforcement Administration agent Nathan Koen testified that he was assigned to handle Petitioner's drug investigation. Resp. Ex. B at 181. During that time, confidential informant Francisco Gonzalez was working at the direction of Koen, helping Koen with ongoing drug investigations. Id. Koen knew Gonzalez because he was a defendant in one of Koen's prior investigations. Id. at 182. According to Koen, Gonzalez spoke to Koen about potentially investigating Petitioner. Id. at 184. After identifying Petitioner, Koen believed Petitioner to be a viable target and arranged to present Petitioner with a "surprise flash," in which a confidential source meets a target of an investigation and "all of a sudden there are drugs that the [target] can check out." Id. at 183-84.

The following factual summary was taken from the state's answer brief filed in Petitioner's direct appeal:

> At trial, Francisco Gonzalez testified that he met [Petitioner] while working at a shop. Gonzalez explained that he overheard [Petitioner] speaking to other individuals about the price of cocaine. Gonzalez

testified that he conducted "flashes" in this case. During his testimony, Special Agent Koen had explained that a flash is when DEA has a confidential source set up a meeting with the target of the investigation and "all of a sudden there's drugs that the guy can check out." Prior to the first flash, Gonzalez testified that he told [Petitioner] that he had "something come in" that he had to show him. During the flash, Gonzalez showed [Petitioner] a kilogram of cocaine and explained to [Petitioner] that "this my material, this what I got. This is my quantity."

The next flash was conducted with five kilograms of cocaine because that i[s] how much he discussed with [Petitioner] that [Petitioner] would buy. Gonzalez explained [Petitioner] told him he wanted to purchase the cocaine. At first they agreed that [Petitioner] would purchase "around ten bricks in the beginning" and then [Petitioner] reduced that number to five. Gonzalez explained that he handed [Petitioner] one of the bricks to look at and [Petitioner] opened it with a blade. The conversation, which was video recorded, was published to the jury. After inspecting the cocaine, [Petitioner] told Gonzalez that he wanted to purchase everything. [Petitioner] did not have the money at that time[,] however[,] later that day he informed Gonzalez that he was getting money together with other people.

When [Petitioner] was able to get all the money together, Gonzalez met him at the shop where Gonzalez worked and Gonzalez drove [Petitioner] to Longhorn's and dropped him off. After approximately an hour, [Petitioner] informed Gonzalez that he had the money ready and wanted to purchase "two-and-a-half." Gonzalez explained that this meant two bricks and a half which is approximately 200 kilograms of cocaine. Gonzalez testified that he told [Petitioner] he would sell him three not two and a half because he does not break them. [Petitioner] told Gonzalez that he had $72,000 to pay for the cocaine and Gonzalez went to pick him up

9

at the gas station next to Longhorn's. Gonzalez testified that he saw [Petitioner] carrying a bag of money which he gave to Gonzalez. [Petitioner] was then arrested by the DEA agents.

James Degelmann testified that he has been friends with [Petitioner] for a number of years. Degelmann explained that, the day he was arrested, he spoke with [Petitioner] about purchasing a kilogram of cocaine for $32,000 from "some Mexican guy he knew." Degelmann testified that on June 17, 2013, he got his money together and went to meet [Petitioner]. They were originally supposed to meet at one restaurant[,] however Degelmann "felt suspicious" about a car in the parking lot so he changed the location to Longhorn's. Degelmann testified that he, [Petitioner] and Peterson sat at the table having [a] couple [of] drinks and he became confused because he thought they would make the exchange and he could "get on about my business." By "exchange," Degelmann explained he would give [Petitioner] the money and get the cocaine in exchange. When Degelmann and [Petitioner] left the restaurant, [Petitioner] told Degelmann to sit in his truck until [Petitioner] came to get the money, which [Petitioner] did. The bag of money [Petitioner] took from Degelmann contained $28,000 which he had made by working and selling drugs. After [Petitioner] left with the money, he called Degelmann and told him to go to the gas station. When Degelmann arrived he was arrested.

Agent Voege testified that after [Petitioner] was arrested and read his <u>Miranda</u> warnings, [Petitioner] gave a statement. [Petitioner] told Voege that he had gone to at least three different vehicles and gotten money from two individuals in those vehicles. [Petitioner] stated that there was approximately $72,000 in the page and that they were paying $34,000 per kilo for cocaine. [Petitioner] explained to Agent Voege that if he had not been arrested, Gonzalez would

have given him the five-kilos of cocaine.

Resp. Ex. E (record citations omitted). Following the evidence, the trial court granted Petitioner's motion for judgment of acquittal on count four, conspiracy to traffic in cocaine with William Peterson named as the coconspirator. Resp. Ex. B at 442. The jury then found Petitioner guilty of attempt to possess cocaine, a lesser included offense for count one, and count two, conspiracy to traffic in controlled substances with James Degelmann as the coconspirator. Resp. Ex. A at 140. The trial court sentenced Petitioner to a five-year term of incarceration as to count one and a twenty-year term with a fifteen-year minimum mandatory as to count two, with count two to run concurrent with the sentence for count one. Id. at 140-42.

## IV. __The Petition__

### a. Ground One

Petitioner argues his trial counsel was ineffective for failing to investigate and seek dismissal of his case based on police misconduct and misuse of confidential informant Francisco Gonzalez during a joint task force operation. Doc. 1 at 6. According to Petitioner, officials' use of C.I. Gonzalez and police misconduct to effect his arrest amounted to a due process violation. Id.

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion filed with the trial court. Resp. Ex. Q at 2. The trial court

11

summarily denied the claim as follows:

> Defendant's first ground alleges that counsel rendered ineffective assistance by failing "to reasonably investigate the available meritorious bases to seek dismissal of the case on grounds [of] police conduct and misuse of Confidential Informant (C.I.) Francisco Gonzalez . . . ." Defendant asserts that the confidential informant was an "undocumented major drug trafficker associated with one of the largest Mexican drug cartels." Defendant alleges that Gonzalez acted without police supervision and was desperate, after working 5 cases unsuccessfully, "to find a citizen to target for arrest" to reduce the lengthy sentence he was facing. According to Defendant, Gonzalez was "set loose in the community" to "target drug traffickers operating at or above his level which meant kilogram operations." Defendant alleges that Gonzalez "was allowed to create a trafficking offense and offender where none existed without the assistance of him and the government[,]" and that the actions of the police and the confidential informant constituted outrageous government conduct, depriving Defendant of due process.
>
> Defendant alleges Gonzalez targeted him for arrest. The unrebutted evidence at trial was that, while at his workplace (the same body shop where Defendant alleges he was working), Gonzalez heard Defendant and others talking about the high and rising price of a kilogram of cocaine. Gonzalez joined the conversation, agreeing about the high prices. When Defendant asked Gonzalez how he knew that, Gonzalez told him he was Mexican. Gonzalez testified that he informed law enforcement about the conversation and was instructed to keep talking to Defendant. Gonzalez then arranged and conducted two surprise flashes of cocaine to Defendant: first of a kilogram, then of five kilograms. Gonzalez testified that between the two flashes, Defendant expressed a desire to purchase several

12

kilograms of cocaine from Gonzalez, settling on five kilograms, hence the size of the second flash. Gonzalez testified that, later in the day of the second flash, Defendant was in contact with him about the progress Defendant was making toward getting sufficient money together, and that at some point that afternoon, June 17, 2013, Gonzalez dropped Defendant off at a Longhorn restaurant. Throughout Gonzalez's conversations with Defendant leading up to dropping Defendant off at the restaurant, before Gonzalez made any decisions, Gonzalez contacted law enforcement and informed them of Defendant's conversations. After about an hour, Gonzalez heard from Defendant that Defendant wanted to purchase two-and-a-half kilograms of cocaine. Gonzalez met Defendant at a gas station next to Longhorn, where Defendant entered the vehicle Gonzalez was driving and deposited a bag of money in Gonzalez's lap. Gonzalez gave a signal, and DEA agents arrested Defendant and Gonzalez.

To support his assertion that government actions violated his due process rights, Defendant relies on cases which are distinguishable from the instant case. For example, in State v. Glosson, 462 So. 2d 1082 (Fla. 1985), the Florida Supreme Court held that a contingent fee agreement violated due process where a confidential informant would receive ten percent of all civil forfeitures arising out of successful criminal investigations, opining, "We can imagine few situations with more potential for abuse of a defendant's due process right. The informant here had an enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of the contingent fee." Glosson, 462 So. 2d at 1085. Glosson has been recognized as "very fact specific," and it is distinguishable from the instant case. State v. Hunter, 586 So. 2d 319, 321 (Fla. 1991). At trial, Gonzalez, the confidential informant, testified that he entered a plea to conspiracy to trafficking in controlled substances, and that the range of sentencing

he was facing was based on his "helping [the State] basically get other drug dealers, working with [the] D[rug] E[nforcement] Administration]." There was no evidence that Gonzalez would be paid a contingent fee based on successful assistance to the State, as in Glosson.

Defendant cites Soohoo v. State, 737 So. 2d 1108 (Fla. 4th DCA 1999)[,] to support his assertion that "Gonzalez was allowed to create a trafficking offense and offender where none existed without the assistance of him and the government." In Soohoo, a confidential informant initiated contact with the defendant, who was known to him to have purchased cocaine in the past. Soohoo, 737 So. 2d at 1108. The informant called the defendant from across the country and offered to sell a certain amount of cocaine, but the defendant did not agree. Id. As an incentive to move that amount, the informant offered to come to where the defendant was and help distribute it. Id. When the defendant declined, the informant offered a smaller quantity, and an equal amount on credit. Id. at 1108-09. The appellate court found the defendant's due process rights violated, opining, "Perhaps most egregious and offensive in this case was [the informant]'s offer to help [defendant] distribute the product if he were to purchase five kilos of cocaine and his subsequent offer to give [defendant] a second kilo on credit if he were to purchase one kilo." Id. at 1111.

In this case, there was no offer to help distribute the drugs, as in Soohoo. Rather, it was Defendant who first brought up the price of cocaine in conversation; the government used Gonzalez to gauge Defendant's interest in purchasing cocaine and, without pressure, Defendant agreed to do so. "Cases finding a due process violation based on outrageous government conduct have one common thread: affirmative and unacceptable conduct by law enforcement or its agent. In contrast, creating nothing more than an opportunity to commit a

crime is not prohibited." State v. Harper, 254 So. 3d 479, 484 (Fla. 4th DCA 2018) (citations and internal quotation marks omitted). The Harper court found no due process violation where "law enforcement simply conducted a reverse sting operation providing the defendant with the means and opportunity to engage in a burglary, and he agreed to participate." Harper, 254 So. 3d at 485. So, here, this Court finds no outrageous government conduct constituting a violation of Defendant's due process rights.

Defendant also complains that the first surprise flash occurred "within 1,000 feet of a church/school, while school was in attendance of children . . . ." He describes the flashes as having introduced "dangerous drugs . . . into the community against the public safety of the community[,]" citing State v. Williams, 623 So. 2d 462 (Fla. 1993). There, the court found that law enforcement "acted illegally in manufacturing the crack cocaine it used in the reverse sting operation which led to Williams' arrest." Williams, 623 So. 2d at 466. Williams is inapposite, and the testimony of DEA agent Nathan Koen, who supervised the flashes, provided unrebutted evidence of how the agency obtained the drugs for the flash, the precautions taken to prevent the drugs from leaving government custody, and their safe return to an out-of-county laboratory. Nothing in the record supports Defendant's conclusory allegation that either of the flashes put public safety at risk.

Defendant asserts that Gonzalez "was allowed to determine [the] potential mandatory minimum prison term and fine Mr. Henry would face by selecting the amount of drugs to be sold. Here, due process is offended on these facts." However, where a defendant argued on appeal that an informant's agreement with the government "caused him to intentionally set up [a] large cocaine purchase by the codefendants even though the authorities knew of no prior criminal

activity by them[,]" the court held that "these factors alone do not amount to a violation of due process." Khelifi v. State, 560 So. 2d 333, 334 (Fla. 4th DCA 1990). In fact, Defendant himself here asserts that the law enforcement officers working with Gonzalez had thoroughly investigated Defendant and knew of his three prior drug charges and that he was "working his probation off" at the body shop where he and Gonzalez met. Therefore, Defendant was not a person without a criminal record, as in Khelifi, and even the Khelifi court found no violation of due process on facts otherwise similar.

Defendant emphasizes law enforcement's lack of supervision of the confidential informant. However, there was no evidence that Defendant was harassed, threatened, or tricked into agreeing to buy cocaine, and Defendant does not allege in his Motion that he was. Defendant acknowledges his prior drug offenses, and alleges that law enforcement was aware of them before approving his "targeting" by Gonzalez. On similar facts, but in a case where law enforcement had not even verified the defendant's prior drug involvement, there was found to be no violation of due process. Mendel v. State, 903 So. 2d 1027, 1029 (Fla. 4th DCA 2005). Similarly, here, this Court finds no due process violation in the actions of law enforcement and the confidential informant. Therefore, counsel was not ineffective for failing to file motions to dismiss, to suppress, or in limine, or to renew the motion for judgment of acquittal after the verdict.

Resp. Ex. Q at 192-96 (record citations omitted). Petitioner appealed, and the

First DCA issued a written opinion affirming the trial court's denial. Resp. Ex.

U. In its written opinion, the First DCA addressed no specific claim, but instead,

stated:

16

> AFFIRMED. Appellant is warned that any future filings that this court determines to be frivolous may result in the imposition of sanctions, including a prohibition against any further pro se filings in this court and a referral to the appropriate institution for disciplinary procedures as provided in section 944.279, Florida Statutes (2020) (providing that "[a] prisoner who is found by a court to have brought a frivolous or malicious suit, action, claim, proceeding, or appeal" is subject to disciplinary procedures pursuant to the rules of the Department of Corrections).

Id.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court defers to the state court's finding that the evidence showed Petitioner voluntarily engaged with Gonzalez to get cocaine and nothing suggests the police engaged in any form of misconduct to arrest Petitioner. As such, trial counsel did not act deficiently in failing to file pretrial motions challenging the charges based on the state's use of Gonzalez. And upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground One is denied.

**b. Ground Two**

Petitioner asserts the trial court erred in denying his request for a special jury instruction that individuals who engage in only a "buy/sell" drug

transaction are not guilty of conspiracy, which violated his due process rights under the Fourteenth Amendment. Doc. 1 at 11-12. Respondents argue that this claim is unexhausted and procedurally defaulted because when he raised the issue during his direct appeal, Petitioner did not present the federal nature of this claim to the state court. Resp. at 22-24. The Court agrees.

Prior to trial, trial counsel filed a request to include the following special jury instruction:

> A conspiracy requires more than just a buyer-seller relationship between the defendant and another person. To establish that a seller knowingly became a member of a conspiracy with a buyer to traffic in cocaine, the State must prove there was an agreement to commit the same criminal act and a seller's purchase or possession of cocaine is not the same criminal act as a buyer's subsequent purchase or possession of a portion of that cocaine.

Resp. Ex. A at 91. The trial court denied trial counsel's request. Resp. Ex. B at 461. On direct appeal, with help from appellate counsel, Petitioner, as his sole claim for relief, argued the trial court erred in denying his request to include this jury instruction. Resp. Ex. D.

When briefing this issue in the state appellate court, however, Petitioner did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee. See id. Instead, Petitioner argued, in terms of state law only, that "[t]he presumptions, inferences, and conflicts in

18

the evidence [were] weighed in favor of giving the instruction" because the facts were "more akin to the typical buyer-seller arrangement" rather than a conspiracy. Id. at 10 (citing Schlicher v. State, 13 So. 3d 515 (Fla. 4th DCA 2009); Pallin v. State, 965 So. 2d 1226 (Fla. 1st DCA 2007); Davis v. State, 95 So. 3d 340 (Fla. 5th DCA 2012)). As such, because Petitioner failed to present the federal nature of this claim in the state court, it is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for or prejudice from this procedural bar. And he has identified no fact warranting the application of the fundamental miscarriage of justice exception. Ground Two is denied.

### c. Ground Three

Petitioner contends his trial counsel was ineffective for failing to argue to the trial court that the state did not present enough evidence to prove the elements of count two – conspiracy to traffic in a controlled substance with coconspirator James Degelmann. Doc. 1 at 14-16. He also alleges trial counsel did not present to the trial court a federal due process claim based on the prosecutor's failure to present enough evidence to support the jury's guilty verdict for that crime. Id. at 14.

Petitioner raised these claims in his Rule 3.850 motion. Resp. Ex. Q at 11, 31. The trial court summarily denied the issues:

Defendant argues that counsel was ineffective for failure to move for judgment of acquittal on the basis that the conduct of the confidential informant and law enforcement deprived Defendant of due process. As noted above, the due process defense lacks merit; therefore, counsel was not ineffective for failure to present it to the trial Court. Defendant's assertion of cumulative error in Ground Five is likewise without merit, there being no meritorious claims of ineffective assistance of counsel presented in previous grounds.

. . . .

Defendant asserts that counsel was ineffective for failing to raise a federal due process claim that the evidence was insufficient to prove the conspiracy charged in Count Two. Defendant cites <u>Fiore v. White</u>, 531 U.S. 225 (2001)[,] for support. In <u>Fiore</u>, after the defendant's conviction became final, the state supreme court interpreted the statute for the first time, making clear that the defendant's conduct was not within its scope. <u>Fiore</u>, 531 U.S. at 226. A codefendant, convicted of the same crime at the same time, obtained relief, but Fiore was denied relief. <u>Id.</u> at 227. Under those circumstances, the Supreme Court held that Fiore's conviction and continued incarceration violated due process. <u>Id.</u> at 228. The instant case bears no resemblance to <u>Fiore</u>. In fact, counsel did move for judgment of acquittal, arguing that the evidence was insufficient to prove guilt on Counts Two and Four; Defendant prevailed on Count Four. Nothing about the <u>Fiore</u> case appears to provide any further basis for counsel to have argued sufficiency of the evidence.

Defendant also alleges "Ineffective assistance at trial" without elaboration, and cryptically includes, "<u>Kimmelman v. Morrison</u> (claim)[.]" <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986), held that prisoners could seek federal habeas corpus relief on a claim of ineffective assistance of counsel based on an attorney's

> allegedly incompetent representation with respect to an issue involving unconstitutional search and seizure. It has no application to this action. Supplemental Claim Eleven is without merit.

Resp. Ex. Q at 200, 205. Petitioner appealed, and the First DCA affirmed the trial court's denial, issuing the written opinion as quoted in Ground One. Resp. Ex. U.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. As the trial court explained in its order, trial counsel moved for a judgment of acquittal on counts two and four. Resp. Ex. B at 402-07. As to count two, trial counsel argued that Degelmann testified that he knew nothing about Gonzalez's participation in the transaction, but instead believed he was only buying cocaine from Petitioner, which does not show the elements of conspiracy. Id. at 402-04. The trial court denied trial counsel's request as to count two, finding that the conduct between Petitioner and Degelmann showed corroboration to carry out the purchase of cocaine from Gonzalez. Id. at 441. The evidence supported the trial court's ruling and nothing suggests trial counsel should have done anything more to challenge the sufficiency of the evidence supporting count two, and Petitioner's due process claim is otherwise without merit.

Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither

contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Three is denied.

### d. Ground Four

Petitioner alleges his trial counsel was ineffective for failing to file a motion to suppress the cocaine; the $71,590; and the testimony of Agent Voege, C.I. Gonzalez, and James Degelmann, because "the targeting of [Petitioner] was not supported by reasonable articulable suspicion of probable cause." Doc. 1 at 19.

Petitioner raised this claim in ground two of his Rule 3.850 motion. Resp. Ex. Q at 26-28. The trial court denied the claim:

> Defendant's second ground alleges that counsel was ineffective for failure to file a pretrial motion to suppress the cocaine, the $71,590.00 seized from the confidential informant's car, and the testimony of several witnesses. Such a motion to suppress would have been grounded on the targeting of Defendant in the reverse sting, which Defendant alleges (in a conclusory fashion) constituted an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Florida Constitution. However, Defendant fails to provide explanation or authority, and this Court is aware of none, by which actions of law enforcement in this case, short of arrest, or those of the confidential informant, would constitute a search or seizure. Defendant's cases, <u>Florida v. J.R.</u>, 529 U.S. 266, 271 (2000), and <u>Reid v. Georgia</u>, 448 U.S. 438, 441 (1980), are to no avail. <u>J.R.</u> held an anonymous tip of

insufficient reliability to justify a <u>Terry</u> stop; <u>Reid</u> involved seizure of cocaine in an airport from a person who fit a "drug courier profile." Both are inapposite. Defendant's general attacks on the investigation as violative of his due process rights are without merit, as [stated] in Ground One

As to the money seized, Defendant argues it was due to be suppressed because each person arrested signed a disclaimer of the money. James Degelmann, Defendant's co-conspirator in Count Two, testified that Defendant retrieved a bag containing $28,000 from Degelmann's back seat on the day of arrest. In any event, the seizure of the money was lawful because it was incident to an arrest, which is an exception to the requirement of a search warrant. <u>Allgood v. State</u>, 403 So. 2d 586, 587 (Fla. 1st DCA 1981).

At trial, Degelmann testified that he had seen Defendant "in the club a couple of months before [the day of the arrest] and he told me I needed to get in contact with him . . . ." Based on that, Degelmann contacted Defendant on the day of arrest to purchase a kilogram of cocaine. Defendant urges that Degelmann's testimony should have been suppressed because it was evidence of a conspiracy outside the scope of that charged in this case, and because it was evidence of collateral crimes from which the jury could have inferred that Defendant was involved in ongoing criminal activity. "Evidence of other crimes, wrongs, or bad acts is admissible if it is relevant and probative of a material issue and not used for the purpose of demonstrating bad character or propensity." <u>Holmes v. State</u>, 91 So. 3d 859, 862 (Fla. 1st DCA 2012).

> Typically, there are three reasons for admitting inextricably intertwined collateral crime evidence: (1) it is necessary to establish the entire context out of which the charged crimes arose; (2) it is necessary

23

to provide an intelligent account of the crimes charged; and (3) it is necessary to adequately describe the events leading up to the crimes.

Id. Here, Degelmann's testimony of seeing Defendant at a club some time prior to the day of arrest was relevant to, and probative of, the conspiracy, and necessary to explain why Degelmann contacted Defendant to purchase cocaine from Defendant. In fact, it was Degelmann's interpretation of Defendant's request that Degelmann contact him which provided the relevant context; there is nothing criminal about what Defendant is purported to have said to Degelmann. On these facts, Degelmann's testimony was not inadmissible evidence of collateral crimes; nor was it evidence of an uncharged conspiracy, but was necessary to describe the formation of the charged conspiracy from Degelmann's perspective. Counsel was not ineffective for failing to move to suppress it.

Defendant next argues that Degelmann's guilty "plea to conspiracy to purchase or possess cocaine [. . .] implicitly amended Ct. (2) of the information by removing Degelmann as a conspirator, and it removed the necessary trafficking amount . . . from Ct. (2)." Defendant's assertion that a negotiated disposition of a co-conspirator's charges in another case amended the information in this case is without support and [is] meritless.

Defendant urges the suppression of the testimony of Robert Voege, a special agent with the DEA, because he "had nothing to do with the conspiracy in Ct. (2) . . . ." Defendant asserts more broadly that "none of the evidence about the investigation that led to Defendant's arrest was relevant, admissible, or material in Ct. (2), and served only to prejudice the jury and deny [Defendant] a fair trial." Agent Voege testified he was the arresting officer and that his

> involvement on the day of arrest also included surveillance. Evidence about the investigation leading to arrest was relevant to establish Defendant's agreement to purchase cocaine from the confidential informant and Degelmann's understanding that he was purchasing a kilogram of cocaine from Defendant. Counsel was not ineffective for failing to move to suppress, or object to, that evidence.

Resp. Ex. Q at 196-99 (record citations omitted). Petitioner appealed, and the First DCA affirmed the denial. Resp. Ex. U.

The Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. And upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts, given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Four is denied.

### e. Ground Five

Petitioner alleges his appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in denying Petitioner's motion for judgment of acquittal on count two – conspiracy to traffic in controlled substances with coconspirator Degelmann – where the evidence could not sustain the conviction. Doc. 1 at 24-25.

The testimony and evidence adduced at trial is set out in the initial brief

and the answer brief in the direct appeal. Resp. Exs. D at 4-5; E at 2-4. At trial, after the state rested, trial counsel moved for a judgment of acquittal on the conspiracy counts because the evidence presented was not legally or factually sufficient to sustain a finding of guilt where Degelmann testified that he thought he would buy cocaine from Petitioner and he had no understanding there was any third party that would be involved. Resp. Ex. B at 393-414. The prosecutor argued that the jury instructions provide it is unnecessary that the agreement, conspiracy, combination, or confederation to commit trafficking in cocaine be expressed in any particular words or that words even pass between conspirators, and the defendant need not do any act in furtherance of the offense conspired. Id. at 395-96. The trial judge asked trial counsel: "Seller would be Gonzalez, and would not your client be working in concert or confederacy with Degelmann in the purchase of an amount of drugs the legislature has declared to be trafficking?" Id. at 402. Trial counsel responded: "I would not agree with that for the following reason: That the – that it's not factually supported by the evidence, that what Mr. Degelmann was clear that he was doing was buying cocaine from [Petitioner] and that [Petitioner] he believed had it in his possession and was going to transfer it to him in exchange for that $28,000 in cash." Id. at 402. Trial counsel also argued that Degelmann expressly denied any knowledge of the involvement of any third party, and that he understood

that Petitioner was getting it from somebody else but not that he would be purchasing or dealing with that individual on any level. Id. at 402. Notably, trial counsel argued that Petitioner was the seller and Degelmann was the buyer. Id. at 403.

The trial court later denied the motion as to count two:

> THE COURT: So there is no motion, JOA motion for count one, there is nothing to be addressed in count one. The motion for judgment of acquittal is denied as to count two. The Court finds that the conduct between Degelmann and [Petitioner] in corroboration with each other to effectuate the purchase of cocaine from a seller, Mr. Gonzalez, who testified, is sufficient conduct acting in concert with each other and confederating together to create a conspiracy to traffic in cocaine as the Florida Legislature has defined that amount.
>
> Furthermore, even if it were to be determined that [Petitioner] was to be the seller, there is still sufficient evidence established for a conspiracy as both are expressly engaged in conduct that is the same criminal conduct as defined by the Florida Legislature, and that is the transacting of the amount of cocaine, one kilogram, five kilograms, that expressly has been declared by the Legislature to constitute trafficking, so there is the intent to commit the same criminal offense. So for those reasons, count two, the motion for judgment of acquittal is denied as to count two.
>
> Count four, however, this Court intends to grant a judgment of acquittal as to count four. . . .

Resp. Ex. B at 441-43. The jury then found Petitioner guilty of attempted possession of cocaine, a lesser included offense of attempted trafficking in

cocaine (count one); and conspiracy to traffic in controlled substances, with Degelmann as the coconspirator (count two). Petitioner, with help from appellate counsel, sought a direct appeal, challenging the trial court's failure to permit Petitioner's request for a special jury instruction. Resp. Ex. D. The First DCA per curiam affirmed his judgment and sentences without a written opinion Resp. Ex. G.

Petitioner filed with the First DCA a petition alleging his appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in denying Petitioner's judgment of acquittal on count two. Resp. Ex. K at 7. The First DCA denied the petition "on the merits." Resp. Ex. L.

Thus, the Court addresses this claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore, 575 F.3d at 1264; see also Overstreet, 811 F.3d at 1287. Appellate counsel's

failure to raise a meritless or weaker issue does not constitute deficient performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); Owen, 568 F.3d at 915. Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

Here, the record supports the trial court's denial of Petitioner's judgment of acquittal as to count two; and thus appellate counsel cannot be deficient for failing to pursue a meritless argument on direct appeal. Petitioner has also failed to show a reasonable probability exists that the outcome of his appeal would have been different had appellate counsel made this argument. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Five is denied.

**f. Ground Six**

Petitioner contends his trial counsel was ineffective for failing to renew his motion for judgment of acquittal on count two – the conspiracy to traffic in a controlled substance with coconspirator Degelmann – after the jury's verdict. Doc. 1 at 27-28.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. Q at

12-19. The trial court summarily denied the claim:

> Supplemental Claim Thirteen raises the inconsistent-verdict issue, which this Court has found meritless. While there may be a factual inconsistency between acquittal of attempt to traffic and conviction of conspiracy to traffic, where the only amount of drugs involved that day was sufficient to exceed the trafficking threshold, there is no legal inconsistency because it is possible to conspire to traffic in cocaine without possessing, or attempting to possess, a trafficking amount. <u>See</u> <u>State v. Connelly</u>, 748 So. 2d 248, 252 (Fla. 1999) (recognizing factual inconsistency, but finding no legal inconsistency, between conviction for introducing contraband into a jail and acquittal of possession of cannabis, where the cannabis was the only possible contraband).
>
> Defendant claims that the evidence at trial was insufficient to prove conspiracy with Degelmann, citing Degelmann's lack of knowledge whether Defendant would show up with a kilo of cocaine on June 17, 2013. Of course, such lack of knowledge would not keep Degelmann from being a conspirator. Further, as noted above in the analysis of Supplemental Claim Eleven, defense counsel did move for judgment of acquittal based on insufficiency of the evidence to prove the conspiracy with Degelmann. Defendant alleges no additional facts in Supplemental Claim Thirteen to make the claim meritorious.

Resp. Ex. Q at 206-07. Petitioner appealed, and the First DCA affirmed the

denial, issuing the written opinion as quoted in Ground One. Resp. Ex. U.

The Court addresses Petitioner's claim in accordance with the deferential

standard for federal court review of state court adjudications. And upon

thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Six is denied.

### g. Ground Seven

Petitioner asserts his trial counsel was ineffective for failing to seek a directed verdict of acquittal on count two, conspiracy to traffic in controlled substances 400 grams but less than 150 kilograms with coconspirator Degelmann, once the jury found Petitioner guilty of count one's lesser included offense of attempting to possess less than the trafficking amount of the same controlled substance in count two. Doc. 1 at 30-31. According to Petitioner, his conviction for count two constituted fundamental error and an inconsistent verdict.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. Q at 10. The trial court summarily denied the claim:

> Defendant alleges counsel was ineffective for failing to seek a directed verdict of acquittal on Count Two, "where the jury found Defendant guilty of Conspiracy to Traffic in Controlled Substances 400 grams but less than 150 kilograms, but found him guilty on Ct. (1) of Attempting to Possess less than the trafficking amount of the same controlled substance in Ct. (2)." He argues that the two verdicts are truly

inconsistent. "As a general rule, inconsistent verdicts are permitted in this state. However, an exception exists where a true inconsistency, that is, where an acquittal on one count negates an element necessary for conviction on another, exists. . . ." Mantilla v. State, 38 So. 3d 196, 199 (Fla. 3d DCA 2010). "Inconsistent verdicts are allowed because jury verdicts can be the result of lenity and therefore do not always speak to the guilt or innocence of the defendant." Id. (quoting Brown v. State, 959 So. 2d 218, 220-21 (Fla. 2007) (citation omitted). Thus, a jury finding of not guilty of possession of drugs is truly inconsistent with a jury's finding the same defendant guilty of trafficking based on possession of those drugs. Id. However, "[s]imple possession is not a necessarily lesser included offense of trafficking by delivery, or sale, or any alternate accusation besides possession." McCluster v. State, 681 So. 2d 716, 717 (Fla. 2d DCA 1996). It follows, then, that attempt to possess is not a necessarily lesser included offense of trafficking, nor of conspiracy to traffic.

A "true" inconsistent verdict is one "in which an acquittal on one count negates a necessary element for conviction on another count." Fayson v. State, 698 So. 2d 825, 827 (Fla. 1997) (citations and internal quotation marks omitted). In this case, Defendant was charged with conspiring with James Degelmann "to knowingly sell, purchase, manufacture, deliver, bring into the State, or to be knowingly in actual or constructive possession of 28 grams or more of Cocaine . . . ." He was found guilty of attempted possession of cocaine as a lesser included offense of attempt to traffic in cocaine, and guilty of conspiracy to traffic in cocaine. The jury was instructed on the elements of the crimes charged, and of the lesser included offenses. Acquittal of attempt to traffic in cocaine did not negate a necessary element of conspiracy to traffic in cocaine, according to the jury instructions. Therefore, the verdicts in this case are not truly inconsistent, and

Defendant's Supplemental Claim Ten is without merit.

Resp. Ex. Q at 203-04 (record citations omitted). Petitioner appealed, and the First DCA affirmed the trial court's denial, issuing the written opinion as quoted in Ground One. Resp. Ex. U.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. And upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Seven is denied.

### h. Ground Eight

Petitioner argues his trial counsel was ineffective for refusing to file a motion for new trial based on his own failure to object to inadmissible and prejudicial evidence introduced at trial. Doc. 1 at 33.

Petitioner raised this claim in ground seven of his Rule 3.850 motion. Resp. Ex. Q at 36-39. The trial court summarily denied the claim:

> Defendant's seventh ground alleges counsel's failure to raise several issues in a motion for new trial. As to [the] alleged violation of Defendant's right to due process by actions of the confidential informant and law enforcement officers, this Court has found no merit in the claim. Likewise the claimed error regarding

Defendant's Motion to Discharge Counsel. Next, Defendant claims counsel failed to object to the State's evidence on grounds of its insufficiency. Insufficiency of evidence is not a ground for objection to its admission; furthermore, claims of insufficiency of the evidence cannot be raised in a rule 3.850 motion. Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Neither may Defendant save the claim by couching it in terms of ineffective assistance of counsel. Arbelaez v. State, 775 So. 2d 909, 915 (Fla. 2000). Defendant alleges that Degelmann's testimony that he was charged with the same crime of conspiracy to traffic as Defendant, but pled to a lesser charge, caused "a fatal variance between allegation and the proof at trial[,]" and constituted "an implicit amendment of the information on Ct. (2), because [sic] pleading Degelmann out of the conspiracy in Ct. (2), and reducing the trafficking amount." As in Ground Two, Defendant's assertion that a negotiated disposition of a co-conspirator's charges in another case affected the charges or proof against Defendant in this case is without support and meritless.

Defendant's assertion that Degelmann's testimony was inadmissible due to [an] alleged due process violation by law enforcement and the confidential informant is without merit, as noted above. Defendant also asserts that counsel was ineffective for failing to object to admission of Defendant's statements to Agent Voege, because the State did not establish the corpus delicti of conspiracy without those statements. However, this Court finds abundant, unrebutted evidence of the conspiracy in the record, without depending on Defendant's statements to Agent Voege. Ground Seven is without merit.

Resp. Ex. Q at 201-02 (record citations omitted). Petitioner appealed, and the

First DCA affirmed the trial court's denial, issuing the written opinion as

quoted in Ground One. Resp. Ex. U.

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. And upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Eight is denied.

### i. Ground Nine

Petitioner alleges his trial counsel was ineffective for failing to challenge Special Agent Voege's illegal interrogation, which violated his right to counsel. Doc. 1 at 35. Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. Q at 10. Specifically, he stated:

> Whether Counsel was ineffective for failing to challenge the violation of Mr. Henry's right to counsel by Agt. Voege, "intentionally creating a situation likely to induce Henry to make incriminating statements" to Voege, "My guys would have come and got the work and started selling it." See Ayers v. Hudson, 623 F.3d 301 (6th Cir. 2010). Voege failed to honor Defendant's right to remain silent in securing statements. See Withrow v. Williams, 507 U.S. 680 (1993). Counsel failed to seek suppression of this testimony from use at trial, and/or failed to move in limine to prohibit the State or its witness, Agt. Voege, from mentioning this statement at trial. An Evidentiary Hearing is required on whether Counsel's failure to challenge this violation of Mr.

Henry's rights resulted from reasonable trial strategy.
<u>See</u> <u>Strickland</u>, <u>supra</u>.

Resp. Ex. Q at 10. The trial court summarily denied the claim as follows:

> In his Memorandum of Law and Facts in Support of
> Post-Conviction Relief, Defendant raises five additional
> claims. The ninth claim alleges that counsel was
> ineffective for failing to move to suppress Agent Voege's
> testimony that Defendant made the incriminating
> statement, "My guys would have come and got the work
> and started selling it." Defendant alleges that Agent
> Voege "intentionally created a situation likely to induce
> [Defendant] to make incriminating statements[,]" and
> "failed to honor Defendant's right to remain silent in
> securing statements." Defendant fails to allege facts to
> support these conclusory allegations. At trial, Agent
> Voege's testimony was unrebutted; he testified that,
> after arresting Defendant, he read Defendant his rights
> from a plastic card. Agent Voege testified that
> Defendant acknowledged that he understood his rights,
> and agreed to speak with Agent Voege. On those facts,
> there was no basis to move to suppress, and Defendant
> does not allege that his counsel was aware of any
> contrary facts. Supplemental Claim Nine is without
> merit.

Resp. Ex. Q at 203 (record citations omitted). Petitioner appealed, and the First

DCA affirmed the denial, issuing the written opinion as quoted in Ground One.

Resp. Ex. U.

The Court addresses Petitioner's claim in accordance with the deferential

standard for federal court review of state court adjudications. And upon

thorough review of the record and the applicable law, the Court concludes that

the state court's decision to deny Petitioner's claim was neither contrary to nor

an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Nine is denied.

### j. Ground Ten

Petitioner contends his trial counsel was ineffective for failing to file a motion in limine to prohibit the state or its witnesses from mentioning at trial evidence of the investigation that led to Petitioner's arrest, including evidence that Petitioner and Gonzalez discussed cocaine at work because that evidence was irrelevant and inadmissible. Doc. 1 at 37.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. Q at 6-7. The trial court summarily denied the claim:

> Defendant's third ground argues that counsel was ineffective for failing to file a motion in limine to prohibit mention or evidence of the investigation that led to Defendant's arrest, on the ground that evidence of the investigation was irrelevant to any issue before the jury. As noted above, evidence of the circumstances leading up to Defendant's arrest was relevant and material to conspiracy. This case is distinguishable from <u>Perez v. State</u>, 79 So. 3d 140 (Fla. 3d DCA 2012). In <u>Perez</u>, a state trooper performed a traffic stop for a broken taillight. <u>Perez</u>, 79 So. 3d at 141. A consensual search of the vehicle produced drugs. <u>Id.</u> It was error to allow testimony that the Florida Highway Patrol was in the area, or following the defendant, for a narcotics investigation. <u>Id.</u> at 142. Here, in contrast, evidence of how the confidential informant was used, and what people were doing before arrest, was relevant to the conspiracy charges.

Defendant also argues that he was prejudiced by introduction of the term "work," and the inference "that people in the 'drug game' commonly use these phrases or word[s] to reference drugs." The argument is without merit. Here, the term "work," and its slang meaning, were attributed to Defendant himself; no inference was necessary, because Defendant provided the definition. In Ground Three, Defendant takes issue with some of the evidence introduced at trial. Defendant's arguments provide no basis for a meritorious objection to any of that evidence, but go to the weight to be accorded the evidence rather than its admissibility, or constitute attacks on the sufficiency of the evidence. None of the arguments state a meritorious basis to find that counsel was ineffective.

Defendant argues further that, by finding Defendant not guilty of attempt to traffic in cocaine in Count One, the jury "believed a complete and voluntarily [sic] renunciation or abandonment by Defendant of his criminal purpose to commit the Trafficking offense. . . ." Defendant's interpretation is not necessarily true. In any event, Degelmann's testimony that he intended to purchase a kilogram of cocaine from Defendant remains unrebutted.

Defendant's last argument on Ground Three is that counsel was ineffective for failing to seek a statement of particulars. Defendant fails to show, in light of [the] evidence at trial, how that omission by counsel prejudiced him.

Resp. Ex. Q at 199-200 (record citations omitted). Petitioner appealed, and the First DCA affirmed the denial, issuing the written opinion as quoted in Ground One. Resp. Ex. U.

The Court addresses Petitioner's claims in accordance with the

38

deferential standard for federal court review of state court adjudications. And upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Ten is denied.

### k. Ground Eleven[3]

Petitioner asserts his trial counsel was ineffective for failing ask the state for a statement of particulars alleging the specific act that constituted the trafficking offense. Doc. 1 at 39.

Petitioner raised this issue as a sub-claim to ground three of his Rule 3.850 motion. Resp. Ex. Q at 31. As mentioned, the trial court denied the sub-claim as follows:

> Defendant's last argument on Ground Three is that counsel was ineffective for failing to seek a statement of particulars. Defendant fails to show, in light of [the] evidence at trial, how that omission by counsel prejudiced him.

Resp. Ex. Q at 199-200 (record citations omitted). Petitioner appealed, and the First DCA affirmed the denial, issuing the written opinion as quoted in Ground One. Resp. Ex. U.

---

[3] Petitioner duplicates the labeling of his grounds and refers to this Ground as "Ground Ten." Doc. 1 at 39. The Court will refer to this claim as "Ground Eleven."

The Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that a motion for statement of particulars may be filed when the information fails to inform a defendant of the particulars of the offense sufficient to enable him to prepare his defense. Fla. R. Crim. P. 3.140(n). Here, there was no ambiguity in the information, and Petitioner has failed to establish that he was prejudiced by any alleged ambiguity or that the information failed to place him on notice sufficient to enable trial counsel to prepare a defense. Trial counsel was fully aware of the charges and was sufficiently able to prepare a defense. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Eleven is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of August, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Keith Patrick Henry, #J43414
      Counsel of record

---

[4] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.